MILLER (ADAMS v.). See Case No. 63.

MILLER v. The ALICE GETTY. See Case No. 193.

---

## Case No. 9,559.

MILLER v. ANDROSCOGGIN PULP CO.

[5 Fish. Pat. Cas. 340; Holmes, 142; 1 O. G. 409.] [1]

Circuit Court, D. Maine. March, 1872.

PATENTS—MAKING PAPER PULP—WOOD FIBER—INFRINGEMENT.

1. Letters patent for an "improvement in reducing wood to paper-pulp," reissued to A. Pagenstecher, assignee of Henry Voelter, June 6, 1871, which improvement consists in defibring the wood by acting upon a block by a grinding surface, which moves substantially across the fibers, and in the same plane with them, are valid.

2. Such invention is not anticipated by the French patent of Christian Voelter for grinding wood upon the ends of the fibers, or by the English patent of A. A. Brooman, for grinding wood by a stone moving diagonally across the fibers.

3. The novelty of the invention not having been disproved by the facts set up by the defense, and it appearing that there was an actual infringement, and that complainant had been in exclusive possession under the patent for a long time, with the acquiescence of the public: *Held*, that a provisional injunction should be granted.
[Cited in Hat-Sweat Manuf'g Co. v. Davis Sewing-Mach. Co., 32 Fed. 402.]

[Bill in equity [by Warner Miller] to restrain alleged infringement of letters patent [No. 21,161] for an improvement in reducing

---

[1] [Reported by Samuel S. Fisher, Esq., and by Jabez S. Holmes, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 5 Fish. Pat. Cas. 340, and the statement is from Holmes, 142.]

wood to paper pulp, originally granted Henry Voelter, Aug. 10, 1858, antedated Aug. 29, 1856, extended for seven years; reissued June 6, 1871, [No. 4,418,] to A. Pagenstecher, and by him assigned to the complainant.] [2]

A. A. Strout and Causten Browne, for complainant.

W. H. Clifford and Chauncey Smith, for defendants.

SHEPLEY, Circuit Judge. The defendants in this case are charged with an infringement of letters patent for a new and useful improvement in reducing wood to paper-pulp, for which letters patent were issued to Henry Voelter, assignor to Alberto Pagenstecher. The letters patent were originally issued to Henry Voelter, dated August 10, 1858, and antedated August 29, 1856; reissued April 6, 1869, to A. Pagenstecher, assignee; extended for seven years from August 29, 1870; reissued June 6, 1871, to Pagenstecher's assignee; reissue assigned to complainant June 8, 1871.

The Voelter patent is for an improvement in the art of reducing wood into pulp for use in paper, and also for certain improvements in machinery therefor. In the specification of the reissued patent, Henry Voelter states: "The art of reducing wood to pulp, by subjecting the same to the action of a revolving stone, is not a new one, machinery for grinding wood, while a current of water was applied to the stone, having been patented in France, by Christian Voelter, as early as 1847 (see vol. 10, second series, Brevets d'Invention); and in England, by A. A. Brooman, of London, in 1853 (see Repertory of Patented Inventions for May, 1854, p. 410).

"In all the processes known or used prior to my present invention, the wood has been acted upon by the stone in one of two ways, viz: either by causing the surface of the stone to act upon the ends of the fibers, the surface of the stone moving substantially in a plane perpendicular to the fibers of the wood; or, secondly, by acting upon the fibers in such a direction that they were severed diagonally, the surface of the stone moving diagonally across the fibers.

"The first plan, in fact, made powder of the wood. The pulp had no practical length, and, on trial, proved worthless, or nearly so. The second plan was carried out by the use of a stone revolving like an ordinary grindstone, the wood being applied upon the cylindrical surface thereof, with the fibers perpendicular, or nearly so, to planes passing through the axis of the stone and the point or locality where the grinding was performed; and this plan also failed because the fibers were cut off in lines diagonal to their own length, and were consequently too short to make good pulp. There were other difficulties attending the process, not necessary here to mention.

"Such was the state of the art prior to my

---

[2] [From Holmes, 142.]

invention; and my improvement in the art consists in grinding, or rather tearing out the fibers from the bundle of fibers which make up a piece of wood, by acting upon them by a grinding surface, which moves substantially across the fibers, and in the same plane with them."

The first claim in the reissued patent is for the improvement in the art herein described, which consists in tearing or grinding out fibers from blocks of wood, in the manner substantially as described, without cutting or severing the fibers either perpendicularly or diagonally to their length, as heretofore practiced in this art.

The third claim is for the combination of a grinding surface and cells or boxes for blocks of wood, so constructed and arranged with reference to the surface, that the fibers or blocks of wood placed therein lie in the plane, substantially, of the grinding surface, and across the line of motion of points in the grinding surface.

The fourth claim is for, in combination with a revolving grinding surface, blocks of wood so held thereon that their fibers are in the relation to the surface and to the motion of points thereon, substantially as described, so that, by the operation of the grinding surface upon the blocks. fibers will be separated from the same without being cut across.

It is clear that the defendants use the improvements and combinations described in the first, third, and fourth claims of the Henry Voelter patent.

The defense is placed substantially upon the ground that the Christian Voelter patent of 1847, referred to by Henry Voelter in his application in 1858, described the same mode of defibring the wood that the reissue describes and claims. Defendants.contend further that the reissued patent, as interpreted by them, does not state otherwise.

After a careful examination of the specification in the last reissued patent, it appears to be evident that Henry Voelter, after referring to the inventions of Christian Voelter and A. A. Brooman as describing the state of the art prior to his invention, refers to these two patents, when he says, "In all the processes known or used prior to my present invention, the wood has been acted upon by the stone in two ways, viz: either by causing the surface of the stone to act upon the ends of the fibers, the surface of the stone moving substantially in a plane perpendicular to the fibers of the wood; or, secondly, by acting upon the fibers in such a direction that they were severed diagonally, the surface of the stone moving diagonally across the fibers. The first plan" (and herein I think he clearly refers to the invention of Christian Voelter) "in fact made powder of the wood. The pulp had no practical length, and on trial proved worthless, or nearly so." "The second plan" which Henry Voelter describes is an exact description of the plan of Brooman; and he goes on to state that this plan also failed because the fibers were cut off in lines diagonal to their own length, and were consequently too short to make good pulp.

Having thus described the state of the art prior to his invention, he describes his own improvement in the art to consist in grinding, or rather tearing out the fibers from the bundle of fibers which make up a piece of wood, by acting upon them by a grinding surface, which moves substantially across the fibers, and in the same plane with them.

This process of defibring the wood appears to the court to be clearly suggested, indicated, and claimed in the first application of Henry Voelter for a patent, as distinguished from the prior inventions of Christian Voelter and Brooman in those portions of the specification wherein he states that these prior patents are for the very same, or essentially the same invention, and that the principle and elements of his invention have nothing in common with any known or used machinery or apparatus for preparing and assorting woodpulp, except the employment of a circular and rotating mill or grindstone as a reducing agent.

After further reference to the prior state of the art as developed in the patents of Christian Voelter and Brooman, he proceeds to state that a most important and decidedly novel feature is introduced in his invention, by constructing and arranging the reducing apparatus in such a manner as to admit, first, of a position of the block with its fibers parallel to the axis of the revolving stone. This position of the fibers of the wood in the plane, substantially of the grinding surface and across the line of motion of points in the grinding surface, is as clearly stated in his first application to be a most important and decidedly novel feature of his invention as it is in the third and fourth claims of the last reissued patent.

If the invention of Christian Voelter embraced the principles and elements of this invention so far as the position of the fibers of the wood in their relation to the plane of, and the line of motion of points in, the grinding surface is concerned, being the principle and elements which distinguish the process of defibring the wood from all prior processes which severed the fibers either perpendicularly or diagonally to their length, then there was a willful suggestio falsi in the original and all subsequent specifications of the Henry Voelter patent.

It can not for a moment be contended that Henry Voelter did not understand the invention of Christian Voelter so far as it related to this position of the fibers of the wood in their relation to the plane of, and the lines of motion of points in the grinding surface. If any such position of the fibers was contemplated in the invention of Christian Voelter, whereby they would be disintegrated and separated, instead of being ground off perpendicularly or cut off diagonally, then Henry Voelter, who was a brother and partner of Christian

Voelter, and familiar with his process, must not only have known it, but knowing it, have willfully misstated it; and, in the same paper in which he misstated it, have referred to the evidence which would have proved his statement to be false, and his claim that his process of defibring the wood, as distinguished from grinding or cutting off the fibers, was an important and novel feature of his invention, to be groundless.

The very vague and meager description in the Christian Voelter patent, of the mode in which the wood is applied, would not alone afford any conclusive evidence as to the relative position of the fibers of the wood to the grinding surface. The only description in the patent relates to the position of the block itself in relation to the grinding surface, and contains in it no word necessarily descriptive of the relation of the fibers of the wood to the grinding surface. He says only: "Several bits or pieces of knotless timber, of a length equal to the thickness of the grindstone, are pressed against its external circumference." Defendants contend that the word "length" refers to the dimensions of the block in the line of the fibers of the wood, as distinguished from its true length. The word "length" is undoubtedly sometimes used in this sense. Upon this point it is sufficient to say that these words of description are so ambiguous that they might have been applicable, either to a block of wood, with its fibers substantially parallel to the plane of the grinding surface and perpendicular to the lines of motion of points in the grinding surface, or applicable to a block of wood with the fibers substantially perpendicular to the grinding surface. The word "length," it will be observed in this description, is used only for the purpose of showing that the dimensions of the block in one direction are to be equal to the thickness of the grindstone, for the purpose of utilizing the whole grinding surface. The description itself, therefore, being so ambiguous as not to enable us to determine by that alone the relation of the grinding surface to the fibers, we must look to the remainder of the description to see if we can ascertain from the description of the results of the action, what action was contemplated. Is there anything in the subsequent language of the patent, describing what follows from the action of the grinding surface upon the fibers of the wood, which indicates whether the fibers were disintegrated, as they would be if the block were placed with the fibers in one position, or ground or cut off as they would be if the fibers were placed in the other position, in relation to the grinding surface? In the one case there would be long fibers or bundles of fibers of unequal thickness; in the other, short fibers more or less nearly partaking of the character of dust or powder. He says in the subsequent portion of his specification, referring to the bits of wood before referred to: "These pieces are soon fretted away by the ruggedness of the grindstone, and reduced to a kind of pulp, which, falling into a water-bath situated at the inferior part, is transformed into a pulp or paste of a greater or lesser thinness, according to the intention. That pulp is mixed with a variable proportion of rags, to be thus used for the fabrication of paper." It is manifest from this that the relation of the grinding surface to the fibers of the wood was one which was intended to fret away the wood into a powder or dust, which, falling into a water-bath, would, without any previous screening, be transformed into a pulp or paste suitable to be mixed with rags, to be thus used for the fabrication of paper.

The language used, the process described, the results attained, are utterly irreconcilable with the idea of any such defibring of the wood as would take place if the fibers were disintegrated and separated in such a manner as to require subsequent screening and classification, and are entirely reconcilable with the construction that the fibers were to be ground or fretted away to a powder, which, falling into a water-bath, would be transformed into a paste or pulp ready for admixture, like china-clay, with rags for the use and manufacture of paper.

Aided by this description of the results of the action of the grinding surface upon the wood, we find no difficulty in the construction of the Christian Voelter patent, or in determining that the first sentence quoted from the patent contemplates such a relative position of the fiber to the grinding surface as would afford the result described in the sentence last quoted; that is, substantially, that the ends of the fiber were presented to the action of the grinding surface.

This is the construction which Henry Voelter puts upon the Christian Voelter patent. This is the construction which the patent office has four times put upon it.

Without, upon this motion for a preliminary injunction, stating more elaborately the other reasons which have influenced the mind of the court in coming to this conclusion, I have only to remark, in conclusion, that I entertain no doubt that this construction, so repeatedly given and so long acquiesced in, is clearly correct.

The complainant has for a long time been in exclusive possession under the Henry Voelter patent, with the acquiescence of the public therein, and there is no evidence of any interruption of the exclusive possession under this patent, tending in any way to weaken the presumption in favor of his title arising from this enjoyment and acquiescence. The novelty of the plaintiff's invention is not questioned except by the claim that it was anticipated by the patents to Brooman and Christian Voelter. These patents were referred to in the original application of Henry Voelter; the construction of these patents has four times been passed upon at the patent office, as not anticipating the claims in question in the Henry Voelter patent. The

court entirely concurs in the construction thus given.

It is not perceived that any additional light upon the question of the interference with or anticipation of this patent by those set up in the answer could be afforded by any evidence likely to be taken before the final hearing in the cause. So far, therefore, as the question of the novelty of the invention is concerned, the question is as fully presented to the court as there is any reason to suppose it can be at the final hearing. Entertaining no doubt, upon the evidence now presented, of the novelty of the invention, the defendants' process being substantially identical with that claimed in the first, third, and fourth claims of the complainant's patent, it is clearly the duty of the court, under the circumstances, to give the plaintiff the benefit of that presumption of title which the patent affords, and which, in this case, it especially affords him, as against any adverse right set up under patents referred to by him in his original application, and so frequently decided by the patent office not to interfere with the originality of the inventions claimed by him.